IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WILLIAM COLEMAN and GREGORY      Civ. No. 6:11-cv-6022-AA
CHARLES,     OPINION AND ORDER

    Plaintiffs,

  v.

WAYMON HUBBARD, an individual,
and the CITY OF SALEM, a
Municipal Corporation,

    Defendants.
_____

AIKEN, Chief Judge:

    Plaintiffs filed suit alleging unlawful seizure and violation of their rights to equal protection under 42 U.S.C. § 1983 and state law claims for intentional infliction of emotional distress and negligence. Plaintiffs are appearing pro se before this court. Currently pending before the court is a motion for summary judgment filed by defendants. The motion is granted.

1   - OPINION AND ORDER

BACKGROUND

On November 24, 2008, Salem Police Officer Waymon Hubbard was on patrol in Salem, Oregon. Officer Hubbard was wearing a police uniform and driving a marked police car.

At approximately 1:30 p.m., Officer Hubbard received a call for service at Lee Mission Cemetery, a cemetery located adjacent to the Oregon State Hospital. The dispatch report indicated that the caller was the groundskeeper for the cemetery and reported a suspicious vehicle parked in the back of the cemetery, with two occupants, both adult African-American males. The groundskeeper reported that one of the occupants jumped out of the vehicle as the groundskeeper approached and yelled that he was interrupting a police investigation. The groundskeeper also reported that he believed the occupants of the vehicle were involved in sexual acts as the man who jumped out of the vehicle was zipping up his pants. Finally, the groundskeeper advised that he was willing to press trespass charges.

Plaintiffs were the occupants of the vehicle in the cemetery. Plaintiffs maintain they were patrolling the cemetery pursuant to their official duties as security officers for the Oregon State Hospital. Plaintiffs maintain that Mr. Salazar was riding a bicycle over cemetery headstones and appeared to be accessing a weapon when he approached plaintiffs in their vehicle.

Officer Hubbard arrived at the cemetery at approximately 1:41

2    - OPINION AND ORDER

p.m., and he noticed that the front gate was closed and appeared locked. Apparently, Mr. Salazar had locked the gate. Officer Hubbard drove around the block to look for another entrance and saw a vehicle parked as described in the dispatch report, but he could not see inside the vehicle. Officer Hubbard called the groundskeeper, Joe Salazar, and asked how to enter the cemetery. Mr. Salazar advised that he would open the front gate.

As Officer Hubbard drove into the cemetery and approached the subject vehicle, he noticed that it had an "E" license plate, which generally indicates a government-owned vehicle. Officer Hubbard parked close to the vehicle and blocked it from exiting the cemetery.

Officer Hubbard walked around to the driver's side of the vehicle, identified himself, and began to question plaintiffs. According to Officer Hubbard, as he tried to explain his presence plaintiff Coleman appeared upset, continued to interrupt him, and was verbally combative. Officer Hubbard asserts that he told plaintiffs that he was investigating potential trespass and sexual offenses, and that plaintiffs denied any sexual contact. Plaintiffs contend that Officer Hubbard was rude and disrespectful and refused to allow them to answer questions. Plaintiffs also contend that Officer Hubbard never informed them that he was investigating a report of potential sexual activity.

At some point, Officer Hubbard learned that plaintiffs were

3    - OPINION AND ORDER

employed as security personnel for the Oregon State Hospital. Plaintiffs also advised that they were providing surveillance of the hospital grounds as part of their official duties with the Oregon State Hospital. Officer Hubbard then spoke with plaintiff Charles and obtained the name and phone number of their supervisor, Joe McCarty.

Officer Hubbard contacted Mr. McCarty and reported that he was questioning two employees at the Lee Mission Cemetery regarding potential trespass violations. Mr. McCarty arrived shortly thereafter.

When Mr. McCarty arrived, Officer Hubbard informed him of the groundskeeper's report and plaintiffs' assertion that they were in the cemetery conducting surveillance of hospital grounds. Mr. McCarty stated that patrolling the cemetery was not an approved practice and that surveillance of the hospital grounds was not conducted from the cemetery.

Ultimately, Officer Hubbard determined that there was no evidence of any crime, as plaintiffs claimed they were in the cemetery as part of their official duties, there was no evidence of a sexual crime, and plaintiffs denied representing themselves as police officers. Accordingly, Officer Hubbard took no further action and left the scene at approximately 2:11 p.m.

Plaintiffs subsequently were terminated from their positions at Oregon State Hospital as a result of the cemetery incident.

On December 7, 2008, Coleman sought to obtain a copy of the police report prepared by Officer Hubbard. Coleman alleges that he was denied a copy of the police report by a police department employee, even though the report had been completed, approved, and distributed to others.

That same night, plaintiffs allegedly learned about the sexual conduct allegations against them from a former co-worker at the Oregon State Penitentiary. Plaintiffs allege that Office Hubbard informed plaintiffs' former co-worker of the allegations, knowing that such allegations were false. The following day, Coleman obtained a copy of the police report.

## STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The materiality of a fact is determined by the substantive law on the relevant issue, while the authenticity of a dispute is determined by whether a reasonable jury could return a verdict for the nonmoving party in light of the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party has the burden of establishing the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S.

5    - OPINION AND ORDER

317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324. The court must resolve all reasonable doubts as to the existence of genuine issues of material fact against the moving party and construe all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630. However, a genuine issue of fact does not arise where the only evidence presented is "uncorroborated and self-serving" testimony. Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996).

## DISCUSSION

Plaintiffs allege claims of unlawful seizure, violation of their rights to equal protection, intentional infliction of emotional distress, and negligence. I find that plaintiffs fail to present evidence to support these claims.

A. Unlawful Seizure and Equal Protection Claims

Plaintiffs contend that Officer Hubbard detained them without probable cause or reasonable suspicion to do so. However, the undisputed evidence establishes that Officer Hubbard had reasonable suspicion to detain plaintiffs. Plaintiff presents no credible or admissible evidence to dispute that Officer Hubbard was dispatched to the cemetery after receiving a report of potential trespass and sexual activity, and that Officer Hubbard observed plaintiff's

vehicle in the cemetery, parked as described in the report. Instead, plaintiffs portray Mr. Salazar as unreliable and suggest that Officer Hubbard was at fault for "taking the word" of Mr. Salazar. Regardless of the accuracy of Mr. Salazar's reported accusations, plaintiffs present no evidence to refute that such information was provided to Officer Hubbard. Based on the dispatch report and his corroborating observation of the vehicle in the cemetery, Officer Hubbard had reasonable suspicion to investigate and detain plaintiffs. See Ramirez v. City of Buena Park, 560 F.3d 1012, 1020-21 (9th Cir. 2009). And, contrary to plaintiffs' contention that Officer Hubbard believed Mr. Salazar's accusations, Officer Hubbard did not arrest or cite plaintiffs based on the information provided by Mr. Salazar.

Plaintiffs also contend that Officer Hubbard was rude, disrepectful, and combative when questioning them. Even if true, such treatment by Officer Hubbard cannot sustain an unlawful seizure claim, given the reasonable suspicion to support the stop.

Further, plaintiffs present no evidence that Officer Hubbard targeted plaintiffs solely because of their race in violation of their equal protection rights. As stated above, Officer Hubbard had reasonable suspicion to conduct an investigatory stop, and plaintiffs point to no statement or conduct on the part of Officer Hubbard to suggest a discriminatory purpose. See Rosenbaum v. City & Cnty. of San Francisco, 484 F.3d 1142, 1152 (9th Cir. 2007).

7     - OPINION AND ORDER

vehicle in the cemetery, parked as described in the report. Instead, plaintiffs portray Mr. Salazar as unreliable and suggest that Officer Hubbard was at fault for "taking the word" of Mr. Salazar. Regardless of the accuracy of Mr. Salazar's reported accusations, plaintiffs present no evidence to refute that such information was provided to Officer Hubbard. Based on the dispatch report and his corroborating observation of the vehicle in the cemetery, Officer Hubbard had reasonable suspicion to investigate and detain plaintiffs. See Ramirez v. City of Buena Park, 560 F.3d 1012, 1020-21 (9th Cir. 2009). And, contrary to plaintiffs' contention that Officer Hubbard believed Mr. Salazar's accusations, Officer Hubbard did not arrest or cite plaintiffs based on the information provided by Mr. Salazar.

Plaintiffs also contend that Officer Hubbard was rude, disrepectful, and combative when questioning them. Even if true, such treatment by Officer Hubbard cannot sustain an unlawful seizure claim, given the reasonable suspicion to support the stop.

Further, plaintiffs present no evidence that Officer Hubbard targeted plaintiffs solely because of their race in violation of their equal protection rights. As stated above, Officer Hubbard had reasonable suspicion to conduct an investigatory stop, and plaintiffs point to no statement or conduct on the part of Officer Hubbard to suggest a discriminatory purpose. See Rosenbaum v. City & Cnty. of San Francisco, 484 F.3d 1142, 1152 (9th Cir. 2007).

7     - OPINION AND ORDER

Even if plaintiffs had established a constitutional violation, I find that Officer Hubbard is entitled to qualified immunity. Pearson v. Callahan, 555 U.S. 223, 231 (2009). Given the dispatch report, and his observation of plaintiffs' vehicle in the cemetery, Officer Hubbard would have reasonably believed that he was justified in detaining plaintiffs and investigating whether they had permission to be in the cemetery. Ramirez, 560 F.3d at 1020-21. After his questioning of plaintiffs and their supervisor, Officer Hubbard determined that no crime had been committed and took no action against plaintiffs.

Finally, plaintiffs also fail to show that they suffered any violation of their constitutional rights arising from an official policy, practice or custom of the City of Salem. See Monell v. New York Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978); Tatum v. City & Cnty. of San Francisco, 441 F.3d 1090, 1100 (9th Cir. 2006) (absent a constitutional deprivation, the city could not be held liable under § 1983). At most, Officer Hubbard treated plaintiffs with disrespect, and City employees denied plaintiffs a copy of the police report when they initially requested it. However, neither allegation suffices to establish an official policy, practice or custom that triggered the deprivation of a constitutional right.

B. State Law Tort Claims

Plaintiffs contend that Officer Hubbard's conduct supports a claim of intentional infliction of emotional distress (IIED).

8   - OPINION AND ORDER

However, Officer Hubbard's detention of plaintiffs was supported by reasonable suspicion, and his allegedly rude conduct toward plaintiffs does not constitute outrageous conduct sufficient to support an IIED claim. McGanty v. Staudenraus, 321 Or. 532, 543, 901 P.2d 841, 853 (1995); Hetfeld v. Bostwick, 136 Or. App. 305, 308, 901 P.2d 986 (1995) (the tort of IIED "does not provide recovery for the kind of temporary annoyance or injured feelings that can result from friction and rudeness among people in day-to-day life"). Further, plaintiffs present no evidence, aside from their own unsworn and uncorroborated statements, that Officer Hubbard published or shared false allegations about plaintiffs with employees at the Oregon State Penitentiary.

Finally, plaintiffs cannot sustain a negligence claim, as plaintiffs accuse Officer Hubbard of intentional conduct. Kasnick v. Cooke, 116 Or. App. 580, 583, 842 P.2d 440 (1992) (plaintiff cannot allege facts of intentional misconduct and then seek to prevail "by proving only negligence"); Martiszus v. Washington Cnty., 325 F. Supp. 2d 1160, 1172 (D. Or. 2004). Further, the alleged one-day delay in receiving the police report does not constitute negligence on the part of the City. Peterson v. McCavic, 249 Or. App. 343, 350, 277 P.3d 572 (2012) (negligence claims require a showing that the defendant's conduct "unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff") (citation omitted).

9    - OPINION AND ORDER

## CONCLUSION

Defendants' Motion for Summary Judgment (doc. 29) is GRANTED. Plaintiffs' claims are DISMISSED.

IT IS SO ORDERED.

Dated this 15th day of June, 2013.

                          */s/ Ann Aiken*
                          Ann Aiken
                   United States District Judge